JOSEPH S. STACKHOUSE, EXECUTOR UNDER THE WILL OF LEWIS J. MANTEL, DECEASED, PLAINTIFF, v. THE BOROUGH OF PEMBERTON, IN THE COUNTY OF BURLINGTON, A CORPORATION UNDER AND BY VIRTUE OF THE LAWS OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided October 4, 1963.

564

*Mr. George M. Hillman,* attorney for plaintiff.

*Messrs. Parker, McCay & Criscuolo (Mr. Robert W. Criscuolo,* appearing), attorneys for defendant.

WOOD, A. C., J. C. C. (temporarily assigned). This is an action by the executor of the estate of Lewis J. Mantel, deceased, seeking a judgment quieting the title to land and premises of the decedent situate at the northwest corner of Hanover Street and Antis Street in the Borough of Pemberton. The borough contends that certain buildings erected upon said lands encroach upon the dedicated right of way of Antis Street. This claim is denied by the executor.

The facts are substantially undisputed.

The lands of decedent, title to which is in dispute, lie on the west side of Hanover Street (formerly known as Main Street) and on the north side of said Antis Street. Decedent's title thereto stems by *mesne* conveyances from Thomas Throp, who held title thereto in 1792.

On the west side of Hanover Street and the south side of Antis Street lies a tract of land now or formerly owned by Theodore Budd and his wife. Title to this tract was acquired by Mr. Budd by *mesne* conveyances from Thomas Reynolds, who also held title in the year 1792.

In that year the surveyors of the highways of Northampton, Springfield and Hanover Townships made a return of roads or streets in the Village of New Mills, which was dated May 31, 1792 and is noted as received in the County Clerk's office on August 12, 1808 and recorded February 14, 1815 in Book B of Roads, page 254. The streets therein described are the streets of the defendant borough with which we are here con-

cerned. That part of the return which concededly pertains to Antis Street reads as follows:

"Beginning in the said Main Street at the South end of the market house and runs North 66 degrees west 5 chains along the line of Thomas Reynolds, Esquire and Thomas Throp lots to the back street called Jervis Street, twelve feet wide equally on each lot."

In the margin of the record appears an illegible notation.

It is undisputed that Antis Street as it now exists is $13\frac{1}{2}$ feet wide from curb to curb. On the Mantel property, which, as above stated, is located on the north side of Antis Street, are erected certain buildings—a wooden frame store building fronting on Hanover Street, and, behind, *i. e.*, to the west of this building, a smaller frame barn building which was formerly used in the preservation of meats. Mr. Theodore Budd, the owner of the land to the south of Antis Street, and William H. Heisler, Jr., Esq., both of them long-time residents of Pemberton who have served in its local government, concur that the buildings have stood as they now stand, without change in their location or exterior aspect, for at least 60 years. Moreover, it clearly appears that Antis Street has existed as a street slightly over 12 feet wide for at least an equal length of time, and that its physical layout has not been altered since a time prior to the year 1924 when the presently existing curbs were installed.

The borough now maintains, on the strength of the ancient road return, that the original boundary line between the lands of Throp and Reynolds, the remote predecessors in title of Mantel and Budd, respectively, forms the center line of the right of way of Antis Street, which right of way, it is contended, is 24 feet wide. The borough contends that this ancient boundary does not form the center line of the street as it now exists, but is located about 12 feet from the south curb and $1\frac{1}{2}$ feet from the north curb of the street. It follows, says the borough, that the buildings on the Mantel tract encroach on the right of way of Antis Street and that title thereto is therefore defective.

Theodore Shaw, the present borough engineer, testified in detail as to his examination of the chains of title and his physical surveys to establish the location of the ancient line. Assuming, as I must, that his location of the ancient boundary is accurate, I find myself nevertheless unable to agree with the conclusion which the borough seeks to derive therefrom.

The question presented is as to the meaning and effect of the ancient road return. The borough contends that the road return shows the dedication of a strip of land 24 feet wide running from Hanover Street to Jervis Street, for the right of way of the public street now known as Antis Street. This is deduced from the language of the return itself, which states the course to be "along the line of" Reynolds and Throp and to be "twelve feet wide, equally on each lot," coupled with the location of the ancient boundary as determined by Mr. Shaw, not in the center of the present street but 1½ feet from the northerly curb. It is thus argued that the adjoining owners each intended to dedicate a 12-foot strip of land to form the new street. This dedication, says the borough, has never been vacated and still exists despite the fact that, so far as the evidence discloses, no part of the alleged right of way outside the present roadway has ever been used or improved for roadway purposes, and further despite the fact that buildings have stood within the supposed boundaries of the dedicated right of way "since the memory of man runneth not to the contrary."

On the other hand, the borough concedes that the above-quoted language of the road return may be interpreted to mean that the dedicated right of way was to be 12 feet wide, of which six feet were to be taken from the lands of each adjoining owner. Nevertheless, says the borough, if this is the interpretation, the Mantel buildings still encroach upon a portion of the dedicated right of way since, if a six-foot wide strip were to be measured north from the ancient boundary line, the buildings would still encroach thereon.

For his part, plaintiff executor argues that the ancient return being ambiguous and subject to different interpreta-

tions, is so uncertain as to be void, and that the property and improvements thereon having stood unchanged in the hands of the plaintiff and his predecessors in title for more than 70 years last past, title to the disputed strip is vested in decedent and his representatives by adverse possession.

The borough counters that possession in this instance cannot ripen into title even though it be open, notorious and adverse and no matter how long it be continued, since adverse possession cannot run against the State or its subdivisions. *George Van Tassel's Community Funeral Home, Inc. v. Town of Bloomfield,* 8 *N. J. Super.* 524 (*Ch. Div.* 1950) ; *Priory v. Borough of Manasquan,* 39 *N. J. Super.* 147 (*App. Div.* 1956).

In my opinion, the plaintiff's position with respect to the ancient road return is well taken.

The cases dealing with the subject in this State uniformly hold that where the road return is indefinite or uncertain it is illegal. *State v. Clark,* 1 *N. J. L.* (2nd edition) 261—(*page* 226 in the 1st edition)—(*Sup. Ct.* 1794). *State, Taylor, Pros. v. Hulick,* 37 *N. J. L.* 70 (*Sup. Ct.* 1874) ; *State, Charlier, Pros. v. Woodruff,* 36 *N. J. L.* 204 (*Sup. Ct.* 1873).

Thus, in *State v. Clark, supra,* the return was held bad because the course and distance of the road through one tract of land were not specified. In *State, Taylor, Pros. v. Hulick, supra,* where the map annexed to the return did not show division fences or lines between tracts of various owners where the road crossed them, the return was held to be illegal. And in *State, Charlier, Pros. v. Woodruff, supra,* the return was held bad because it did not show the beginning point of the road with accuracy.

In *Griscom v. Gilmore,* 16 *N. J. L.* 105 (*Sup. Ct.* 1837), the court, dealing with a road return, succinctly set forth the standard of accuracy required. The court said:

"But the application and appointment of surveyors may perhaps without impropriety leave some latitude for the exercise of their discretion. They, however, can leave none to those who must follow

to open and work the road. Their return should set out the road in its whole length with such precision that the landholders as well as he or they who have occasion to open or use it, may have no difficulty in ascertaining where they have a right to travel or where they would be trespassing."

Examination of the ancient return here under consideration shows it to be so uncertain and indefinite as to be virtually meaningless so far as the return of Antis Street is concerned. Indeed, the genuine issue as to its interpretation as regards the width of the roadway and the amount of land taken from each owner demonstrates a fatal departure from the standard set forth in *Griscom v. Gilmore, supra.* But there are additional ambiguities.

The beginning point of the street is said to be "in the said Main Street at the South end of the market house." It is difficult to see how such a point could be located with precision. In *State, Charlier, Pros. v. Woodruff, supra,* the court held bad a return describing a beginning point as "near the New Jersey Central Railroad depot, at Roselle, on the northerly side of said depot, and in a line of a road known as Chestnut Street." The same criticism obviously applies to the description here employed.

Moreover, the "map" accompanying this return is utterly meaningless. It is merely a one-line sketch with certain courses and distances marked thereon which correspond to nothing in the return itself.

It follows that the return, so far as Antis Street is concerned, is illegal and void. Therefore, the dedication of the street must rest, not on any documentary evidence—no other such evidence is offered—but on the physical layout of the street itself. It is, of course, clear that a dedication need take no particular form. *George Van Tassel's Community Funeral Home, Inc. v. Town of Bloomfield, supra.* Here it is undisputed that Antis Street has existed in its present width and juxtaposition to intersecting streets since a time beyond living memory. Its location has been confirmed by the building of curbs and the laying of sewers within its present lines. Thus,

there being no dedication by virtue of the road return, the dedication shown is that of the present street as it now exists.

This being so, it is unnecessary to deal with the question of adverse possession. It is conceded that the ancient boundary between Reynolds and Throp lies within (though not in the center of) the present street. Plaintiff, as executor of the estate of Lewis J. Mantel, deceased, is the successor in title to Throp and his lands therefore must be concluded to be presently bounded on the south by the northerly line of the existing street.

I therefore conclude that the buildings located on said lands do not encroach on lands of the borough, and the borough must be held to have no title to any portion of the land lying to the north of the northerly line of the present street. Plaintiff's title in said lands is therefore adjudged to be good.

A form of judgment may be presented in accordance with these conclusions.